**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 12 2023 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT

-------------------------------------------------------------------------x.

CHRISTIAN KILLORAN, on behalf of his son,
AIDEN KILLORAN,

        Plaintiff,

        - against –

WESTHAMPTON BEACH SCHOOL DISTRICT,
CAROLYN PROBST, as Superintendent, MARY ANN
AMBROSINI, as Director of Pupil Personnel,

        Defendant(s).

-------------------------------------------------------------------------x.

Index #:

**CV-23 5298**

**BROWN, J.**

**DUNST, M.J.**

### Verified Complaint

1.    The plaintiff was born with Down Syndrome and thus profiles as a disabled person.

2.    As a disabled person, the plaintiff is entitled to the protections afforded by the Individuals With Disabilities Education Act (IDEA), Section 504 of the Rehabilitative Act of 1973 (504), the Americans With Disabilities Act (ADA), and the rights of due process and equal protection as provided for within the United States Constitution and thus as protected by 42 USC 1983 (1983).

3.    As the Court continues to adjudicate several actions between the parties, it is familiar with the historical general legal dispute between the parties.

4.    By way of distinction however, this complaint specifically relates to the plaintiff's rights attendant to the 2022-2023 academic year.

5.    Although the plaintiff's claims contained herein specifically relate to the 2022-2023 academic year, the plaintiff respectfully submits that there are factual events which preceded the commencement of the 2022-2023 academic year which are necessary for the Court to appreciate and understand.[1]

-----

[1] The plaintiff's academic year commences every July 1st, as he is entitled to Extended Year Services (ESY).

1

6.     Specifically, in this regard, during the 2021-2022 academic year, the assigned Impartial Hearing Officer (IHO) issued an Interim Decision compelling the defendant district to apply for an age-variance for the plaintiff, which would have potentially facilitated his inclusion within a pre-existing "12:1:1 special class" operated within the defendant district's High School.

7.     In accord with the assigned IHO's Interim Decision and accompanying Order, the defendant district submitted the age-variance application, but notably did so upon the defendant district's stated opposition, and with further narrative arguing against any educational justification therefore.

8.     In consequence thereof, and predicated upon the defendant district's arguments, the New York State Education Department (NYSED) denied the plaintiff's age-variance application for the 2021-2022 academic year.

9.     The plaintiff filed an Article 78 proceeding challenging NYSED's denial.

10.     The Honorable Judge Richard Mott issued a decision in the plaintiff's favor, therein holding that NYSED's denial was arbitrary and capricious.

11.     Notably, inclusive within his decision, Judge Mott set forth the appropriate "least restrictive environment (LRE)" factors for NYSED to consider when evaluating the plaintiff's age-variance application.

12.     NYSED filed a motion to re-argue.

13.     Judge Mott denied NYSED's motion, and moreover held that the plaintiff's "age-variance application" was to be deemed renewed for the 2022-2023 academic year.

14.     In consequence of Judge Mott's decision, NYSED ordered the defendant district and the plaintiff to submit briefs regarding their respective positions.[2]

---

[2] NYSED's order is embodied within a letter directive issued to the defendant district on January 3, 2023 and is executed by Kathleen Milliman – Chief of Special Education Services for NYSED.

2

15.     Within the context of its brief, the defendant district, yet again, argued against approving the plaintiff's age-variance.

16.     Based upon the LRE guidance afforded by Judge Mott, and upon deliberation of the parties' respective submitted briefs, NYSED approved the plaintiff's age-variance for the 2022-2023 academic year, and moreover issued an order compelling the defendant district to immediately convene a CSE for purposes of deliberating upon the effect of NYSED's age-variance approval.

17.     On April 14, 2023, the plaintiff's Committee on Special Education (CSE) convened and unanimously recommended the plaintiff's inclusion within the defendant district's pre-existing "12:1:1 special class".

18.     The administrative record is clear that the defendant district refused to file for an age-variance for the 2022-2023 academic year, even though the same was requested during the 2021-2022 academic year.[3]

19.     The administrative record is also clear that the defendant district refused to consider applying for an "age-variance" within the context of the plaintiff's "Annual Review CSE's".[4]

20.     The administrative record is also clear that the defendant district failed to complete the plaintiff's Individualized Education Plan (IEP) and "Annual Review CSE" process until October 2023.[5]

21.     In light of the foregoing, when the 2022-2023 core academic term began in September 2023, the plaintiff remained in a pendency educational placement.

---

[3] The plaintiff has argued that if the defendant district would have timely filed the age-variance in 2021-2022, the same could have been approved well before the commencement of the 2022-2023 academic year – particularly, the core academic term which began in September 2023.

[4] The plaintiff's "Annual Review CSE" was not actually completed until October 2023. The assigned SRO held the delay to be violative of the IDEA, therein precluding the facilitation of a free and appropriate education. (See: SRO Decision, as part of the administrative record).

[5] See: FN # 2.

22.     In September 2023, the plaintiff's special education teacher resigned to pursue another job.

23.     At such time, the defendant district filled the teaching vacancy with uncertified permanent substitutes.

24.     The defendant district did not notify the plaintiff's parents of such circumstance.

25.     In October 2023, the plaintiff learned of such circumstance and informed the defendant district that absent timely reconciliation of the matter, that he would have to commence administrative due process, or alternatively seek emergency relief in Federal Court.

26.     In response to the plaintiff's statements, the defendant district ceased providing the plaintiff with a teacher altogether.

27.     In light of the foregoing, the plaintiff filed an "Order to Show Cause" before this Court, alleging that the defendant district's actions constituted a breach of pendency.

28.     The Court, specifically the Honorable Judge Joanna Seybert, denied the plaintiff's request for emergency relief, but nevertheless retained consideration over whether or not the defendant district's actions represented a breach of pendency.[6]

29.     The Court also expressly permitted the plaintiff to file an administrative complaint regarding whether or not the defendant district's actions constituted a denial of the plaintiff's rights to receive a FAPE.

30.     Further, the Court ordered the defendant district to resume the educational instruction of the plaintiff while it continued to source for an appropriately certified teacher.

---

[6] The matter remains currently remains pending and relates to two inquiries: first, whether the defendant district's staffing of uncertified teachers constituted a breach of pendency, and second, whether the defendant district's cessation of providing a teacher for the plaintiff constituted a breach of pendency. Notably, the assigned IHO held that the defendant district's staffing of uncertified teachers did not constitute a breach of pendency, but that the district's cessation of educational instruction did. The defendant district did not appeal the assigned IHO's secondary finding.

31.    In accord with the allowances set forth by the Court, the plaintiff did subsequently file an administrative due process complaint, therein resulting in the administrative decisions that are partly the subject of this complaint.

32.    Notably, as part and parcel of the assigned IHO's decision, he found that the defendant district had, in fact, violated the IDEA by withdrawing the educational instruction of the plaintiff in October 2023, therein warranting a compensatory education reimbursement award.

33.    The defendant district did not appeal the assigned IHO's finding in this regard.

34.    In any event, during the context of the subject due process hearing, specifically during the testimony of the individually named defendant, Mary Ann Ambrosini, it was elicited that the reason the defendant district withdrew the education of the plaintiff was because he had communicated that he would be forced to commence administrative and or federal litigation against the defendant district absent timely reconciliation of the issue.

35.    Specifically, the admission of the defendant district in this regard is evidenced within the transcript of the due process hearing and reads as follows:

2/27/23 Due Process Hearing Transcript, Cross Examination of Mary Ann Ambrosini, p. 391

*Q: Moving on to paragraph 42, Ms. Ambrosini, in your affidavit. You refer to an e-mail sent by you on October 21st, 2022 in response to the e-mail that's profiled in paragraph 41, correct?*

*A: Yes.*

*Q: The District's response to that e-mail was to stop educating or stop providing A. with a teacher in its entirety?*

*A: The District, in response to your Complaint and threat of litigation, determined that it would cease the instruction until a suitable certified person could be found.*

*Q: You've testified that you thought it was appropriate for the District to staff the replacement teacher?*

*A: I don't remember doing that.*

*Q: Well, was it appropriate? Was it appropriate for the District to staff a replacement teacher after Ms. Cohen resigned?*

*A: Yes, it was appropriate to find a substitute teacher.*

*Q: Your response to our indication to bring a Due Process Complaint was to withdraw that instruction in its entirety?*

*A: Until a replacement special education certified teacher could be found, yes.*

*Q: If you thought it was appropriate to provide a replacement instructor after Ms. Cohen resigned, why would you withdraw that instruction in its entirety?*

*Ms. Leahey: Asked and answered. The witness explained that the instruction ceased as a result of the threat of litigation.*

*Mr. K.: That's her –*

*Q: Is that your answer, that the decision to withdraw was based upon the threat of litigation?*

*The Hearing Officer: Okay. I think Dr. Ambrosini had identified two points, one, parent complaints to the replacement teacher and then two, the threat of litigation. So, I'll sustain the objection.*

*Mr. K.: Sustain it with those answers being the reasons for the District?*

*The Hearing Officer: Yeah. Those are the two reasons she gave. It was asked and answered. That's why she took it away completely, the parents' complaint and threat of litigation.*

*Mr. K.: Okay, as long as it's on the record.*

*The Hearing Officer: It's on the record.*

36.     Based upon the defendant district's admission, the plaintiff filed an administrative complaint alleging that above and beyond the defendant district's actions being violative of the IDEA for precluding the plaintiff's right to receive a FAPE, and further by violating the terms of "pendency", such action also violated the IDEA for being retaliatory in nature.

37.     Notably, this administrative complaint was not consolidated or incorporated into the administrative complaints adjudicated within the context of the referenced administrative due process hearing.

38.     In any event, by way of submitted briefs, the assigned IHO ultimately dismissed the plaintiff's IDEA based retaliation claim, holding therein that the Second Circuit did not recognize IDEA based retaliation claims.

39.     Notably, the plaintiff has initiated an administrative appeal of the assigned IHO's decision, and the matter is currently pending within NYSED's "Office of Review".

*1st Cause of Action: Violation(s) of the Individuals With Disabilities Education Act (IDEA)*

40.     Referencing the administrative complaints that were adjudicated by way of an administrative due process hearing, the record will reveal that five due process complaints were consolidated.

41.     The consolidated administrative complaint set forth the following issues: a) whether the defendant district's refusal to provide the plaintiff with access to a guidance counselor, social worker, librarian, extracurricular activities, clubs, programs and sports precluded the provision of a free and appropriate education (FAPE); b) whether the defendant district's failure to timely convene an "Annual Review Committee on Special Education (CSE)" precluded the provision of a FAPE; c) whether the defendant district's actions and educational program and placement recommendation precluded the plaintiff's ability to be educated within the "least restrictive

environment (LRE)"; d) whether the defendant district predetermined the plaintiff's educational program and placement; e) whether the defendant district failed to consider the appropriate array of educational placement options along the "continuum"; f) whether the defendant district failed to timely pursue the filing of an age-variance application for the plaintiff; g) whether the defendant district's educational program and placement recommendation was capable of facilitating a FAPE; h) whether the defendant district failed to utilize appropriate assessments regarding the development of the plaintiff's "present levels of performance (PLEPS)"; i) whether the defendant district's breach of pendency by ceasing educational instruction and not providing the plaintiff with an appropriately certified special education teacher precluded the plaintiff's ability to receive a FAPE, and j) whether the defendant's breach of pendency by changing the roles of the plaintiff's service providers precluded the plaintiff's ability to receive a FAPE.

42.    In advance of the due process hearing, the plaintiff requested a subpoena seeking the testimony of the defendant district's Superintendent.

43.    The purpose of the subpoena was to allow the plaintiff to elicit evidence regarding his claim that the defendant district had predetermined his educational placement.[7]

44.    By way of an interim decision, the assigned IHO denied the plaintiff's request for a subpoena of the defendant district's Superintendent.

45.    The subject administrative due process hearing commenced on February 13, 2023 and was completed on April 13, 2023.

46.    On April 28, the assigned IHO rendered an administrative decision upon the plaintiff's claims, therein holding that the defendant district had breached pendency by suspending the

---

[7] The defendant district Superintendent, the individually named defendant – Carolyn Probst – had sent an email in 2021 to the plaintiff prohibiting the plaintiff's viewing of the existing district's programs and classes, and moreover clearly stating that the district was not to be considering the plaintiff's placement within the defendant district's classes for upcoming 2022-2023 academic year.

plaintiff's educational instruction in October 2022, but otherwise dismissing the balance of the plaintiff's claims.

47. Within the context of his decision, the assigned IHO found that the delay in holding a CSE meeting for the student's annual review for the 2022-2023 school year did not deny the student a FAPE or deprive the student of educational benefits.

48. Further, the IHO found that the CSE used appropriate assessments to determine the students present levels of performance (PLEPS).

49. Further, regarding the plaintiff's claims pertaining to parent participation and predetermination, the IHO found that the CSE "meaningfully" considered all placement options on the continuum at the August and October 2022 CSE meetings, and furthermore that the parents were permitted to ask questions about all of the placement options.

50. Further, the IHO found that all CSE member other than the parents, recommended placement of the student in a 12:1+1 special class.

51. Further, the IHO found that the parent's disagreement with the October 2022 IEP and placement recommendations did not rise to the level of a denial of the parent's meaningful participation in the CSE process.

52. Further, the IHO found that the CSE's failure to seek an age-variance was reasonable in light of a similar variance being denied a year earlier.[8]

53. Further, the IHO found that the educational program and placement recommendation, which was set forth as the Southampton School District, was capable of providing the plaintiff with a FAPE, and moreover represented the "least restrictive environment (LRE)".

---

[8] At this time, both the defendant district, as well as the assigned IHO, were aware that NYSED's former denial was ordered by Judge Mott to be re-evaluated.

54.     Further, the IHO found that the 2019 Pendency agreement precluded the provision o⁹f a guidance counselor, social worker and librarian and furthermore did not necessitate the provision of the plaintiff's access to extracurricular activities, such as clubs, programs and sports.

55.     Further, the IHO found that the defendant district's staffing of an uncertified special education teacher did not violate pendency.

56.     Further, the IHO found that the defendant district's change in instruction and roles of the plaintiff's educational service providers did not violate pendency.

57.     Based upon the assigned IHO's findings and decision, the plaintiff commenced an administrative appeal.

58.     On June 23, 2023, the assigned State Review Officer (SRO) Sarah Harrington, issued a decision overturning the assigned IHO's finding that the defendant district's failure to have an Individualized Education Plan (IEP) in place for the commencement of the 2022-2023 was not a denial of the plaintiff's right to a free and appropriate education (FAPE), but otherwise upheld the balance of the assigned IHO's findings.

59.     Specifically, in this regard, the assigned SRO held that there was insufficient evidence to support the plaintiff's parents' contention that the assigned IHO had prevented the appropriate development of the administrative hearing by precluding the issuance of a subpoena compelling the testimony of the defendant district's Superintendent, namely the individually named defendant Carolyn Probst.

---

[9] Notably, the Southampton School District would later withdraw its candidacy – a decision which possibly was made as early as October 2022 after the plaintiff's final Annual Review CSE. In any event, such decision was seemingly not conveyed to the defendant district until January 2023. The Southampton School District contends that its decision was predicated due to the conduct of the parents at the Annual Review CSE, but the parent contends that the decision was predicated due to NYSED's inquiry and request to review the program. Indeed, the Southampton School District did not convey its withdrawal of its candidacy until after being contacted by NYSED.

60. Further, the assigned SRO held that the defendant district did not deny the parent with meaningful participation in the CSE process.

61. Further, the assigned SRO held that the defendant district did not predetermine the plaintiff's educational program and placement.

62. Further, the assigned SRO held the defendant district's educational placement recommendation was within the "least restrictive environment (LRE)".

63. Further, the assigned SRO held that the defendant district did not violate the terms of pendency by employing a substitute teacher who was uncertified or for redefining the roles and duties of the plaintiff's educational service providers.

64. Further, the assigned SRO adopted the IHO findings in conclusory fashion.

65. Further, the assigned SRO held that the defendant district was not responsible to provide the plaintiff with access to extracurriculars and the educational services of a guidance counselor, librarian and social worker.

66. Further, the assigned SRO held that the plaintiff had failed to establish a viable claim for compensatory education damages, inclusive of the plaintiff's claim that she did sustain.

67. Based upon the foregoing, the plaintiff's IDEA based claims have now been administratively exhausted and thus remain ripe for this Court's review.

68. The administrative record may be procured by the plaintiff and made available to the Court upon request.

69. The plaintiff submits that the assigned IHO and SRO collectively erred in their respective findings, other than the SRO's finding that sustained the plaintiff's claim relating to how the defendant district's failure to have an IEP completed prior to the commencement of the 2022-2023 academic year precluded the provision of a FAPE.

70. Specifically, in this regard, the plaintiff respectfully submits as follows:

a) First, that the defendant district pre-determined his educational program and placement for the 2022-2023 academic year;

b) Second, that the plaintiff was denied procedural due process by virtue of not being able to subpoena and question the defendant district's Superintendent – Carolyn Probst – about the defendant district's predetermination;

c) Third, that the defendant district's refusal to timely apply for an age-variance for the 2022-2023 academic year ultimately resulted in a preclusion of such option being available for consideration for the commencement of the 2022-2023 academic year;

d) Fourth, that the defendant district's refusal to consider educating him within a 12:1:1 format – irrespective of an age-variance approval – evidenced an improper preclusion of the appropriate continuum of placement options;

e) Fifth, that the defendant district's refusal to consider applying for an age-variance within the context of the plaintiff's "Annual Review CSEs" evidenced an improper preclusion of the appropriate continuum of placement options;

f) Sixth, that the defendant district's educational program and placement option did not represent placement within the "least restrictive environment (LRE)";

g) Seventh, that the defendant district breached pendency by employing a non-certified special education teacher;

h) Eighth, that the defendant district breached the plaintiff's right to receive a FAPE by employing a non-certified special education teacher;

i) Ninth, that the defendant district refusal to allow him access to a guidance counselor, librarian, social-worker and extracurricular activities precluded his right to a FAPE;

12

j) Tenth, that the referenced 2019 Pendency Agreement was never meant or established to set forth the comprehensive scope of the plaintiff's educational program and placement;

k) Eleventh, that the plaintiff suffered a considerable educational deprivation worthy of back-end compensatory education in the form of a monetary award capable of facilitating the plaintiff's placement within a post-secondary learning institution.

*2nd Cause of Action: Violation of 504 – Preclusion of a FAPE*

70.    The plaintiff re-asserts the statements set forth within paragraphs 1-69 herein.

71.    Under 504, students in public schools are protected from disability discrimination.

72.    Under 504, disabled students cannot be excluded from receiving the benefits of a public education.

73.    Under 504, school districts are required to provide students with a FAPE.

74.    Under 504, school districts are required to have procedures to evaluate and place students with disabilities and ensure that students are not misclassified or misplaced.

75.    Under 504, school districts are required to engage in the periodic re-evaluation of students who have been provided with services and prior to effectuating a significant change in placement.

76.    Under 504, school districts are required to provide regular or special education and related aids and services so that the educational needs of disabled students are met as adequately as non-disabled students.

77.    Under 504, school districts are required to educate disabled students with non-disabled students to the maximum extent that this is appropriate for the students with disabilities.

78.    Under 504, school districts are required to have procedures designed to inform parents of school district actions/decisions and to provide parents with a process to challenge those

13

actions/decisions, including notice, an opportunity for parents to review their child's records, an impartial due process hearing and a review procedure.

79.     Under 504, school districts are also required to have facilities to be accessible to those with disabilities and that students with a disability receive an equal opportunity to participate in athletics and extracurricular activities.

80.     The plaintiff asserts that the defendant district's actions were predicated upon the plaintiff's status as an "alternately assessed disabled special education student".

81.     The plaintiff asserts that the defendant district's actions, as set forth within the administrative record, violated the protections afforded by 504.

*3rd Cause of Action: Violation of 504 – Discriminatory Policy Relating to Educational Services and Extracurricular Activities*

82.     On page 19 of her administrative decision, the assigned SRO noted that "even if there is no violation of Part B of the IDEA, depending on the facts of a particular case, denying the student the right to participate in an extracurricular activity could constitute discrimination on the basis of disability in violation of 504.

83.     Notably, neither the assigned IHO or SRO adjudicated over the whether the defendant district's actions were violative of 504.

84.     On page 20 of her decision, the assigned SRO noted that "to the extent the district's failure to provide the student access to such services and benefits is a matter failing under section 504 or another statute, review of such would be outside of my jurisdiction."

85.     In any event, as the assigned SRO pointed out, state regulation requires that each board of education to adopt a written policy that establishes administrative practices and procedures to ensure that students with disabilities residing in the district have the opportunity to participate in school district programs, to the maximum extent appropriate to the needs of the student including

14

nonacademic and extracurricular programs and activities, which are available to all other students enrolled in the public schools of the district, which may include counseling services, athletics, transportation, health services, recreational activities, special interest groups or clubs sponsored by the school district, referrals to agencies that provide assistance to individuals with disabilities and employment of students, including both employment by the school district and assistance in making outside employment available.

86.     On page 20 of her decision, the assigned SRO noted how the defendant district did not offer documentary or testimonial evidence about the district's policy, or if such policy exists, with respect to students with disabilities participation in nonacademic and extracurricular activities.

87.     Further, on page 20 of her decision, the SRO noted that in a letter, dated September 8, 2022, that the defendant district's Superintendent, namely the individually named defendant - Carolyn Probst - stated that it was the defendant district's apparent policy that provision of a guidance counselor, librarian, and social worker, as well as extracurriculars were only provided to students who were enrolled in classes within the Westhampton Beach High School, as opposed to students like the plaintiff who was receiving his instruction in a "pendency" format.[10]

88.     The plaintiff respectfully submits that the policy set forth by the defendant district and Superintendent Probst was violative of 504.

89.     Furthermore, the plaintiff respectfully submits that the policy set forth by the defendant district was malicious, grossly reckless and/or negligent, served no legitimate purpose, and was callously indifferent to the needs of the plaintiff.

---

[10] At this time, the plaintiff was receiving his related services instruction within the defendant school district and his core academic instruction within the local library. Subsequently, the plaintiff would begin to receive his core academic instruction within the school district. The plaintiff submits that there was absolutely no basis or justification for the defendant district's alleged policy, other than to harm the plaintiff.

15

*4th Cause of Action: Violation of 504 – Retaliation*

90. The plaintiff re-asserts the statements set forth within paragraphs 1-89 herein.

91. 504 provides that any individual, disabled or not, is protected from retaliation for exercising his or her rights. protection against retaliation

92. The plaintiff respectfully submits that by virtue of the retaliatory motive expressed by the defendant district for withdrawing the educational instruction of the plaintiff in October 2022, that the defendant district violated 504's protections against retaliation.[11]

*5th Cause of Action: Violation of the ADA*

93. The plaintiff re-asserts the statements set forth within paragraphs 1-92 herein.

94. In pertinent parts, Section 35.130 of the ADA states the following:

a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any public entity;

b) No qualified individual with a disability shall be denied an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

c) No qualified individual with a disability shall be denied with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as the at provided to others;

d) No qualified individual shall be provided different or separate aids, benefits, or services, unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others;

e) No qualified individual shall be subject to discrimination due to his/her disability;

---

[11] The defendant district admitted that it withdrew its educational instruction of the plaintiff predicated upon the plaintiff's parent indicating that he was prepared to commence litigation. Notably, the defendant district's actions regarding the withdrawal of its educational services has already been deemed to be violative of the IDEA.

f) No qualified individual shall suffer from a practice or policy that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of a public entity's programs with respect to individuals with disabilities;

g) No public entity public entity may determine a site or location of a facility, or make selections related thereto, that have the effect of excluding individuals with disabilities from, denying them the benefits or, otherwise subjecting them to discrimination;

h) No public entity shall have a practice or policy that has the purpose or effect of defeating or substantially impairing the accomplishment of the objective of the public entity's service, program, or activity with respect to individuals with disabilities;

i) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity;

j) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program or activity being offered, and

k) A public entity shall administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

95.    The plaintiff respectfully submits that the facts set forth within the administrative record, as well as herein, establish the defendant district's violation of the ADA.

96. The plaintiff submits that simply because the plaintiff profiled as an "alternately assessed special education student", without an age-cohort within a 3-year period, that the defendant district refused to educate him.

97. The plaintiff submits that such reasoning is discriminatory and malicious.[12]

98. The plaintiff respectfully submits that he was discriminated against, simply by virtue of his age and disability.

99. Further, the plaintiff respectfully submits that the defendant district's refusal to modify its discriminatory practice and/or policy of not allowing students who were not technically placed within a "class" to have access to a librarian, guidance counselor, social worker and extra-curriculars was discriminatory.

100. Further, the plaintiff respectfully submits that the defendant district's actions in this regard were malicious, grossly reckless and/or negligent, served no legitimate purpose, and were callously indifferent to the plaintiff's needs.

*6th Cause of Action – Violation of the ADA - Retaliation*

101. The plaintiff re-asserts the statements set forth within paragraphs 1-100.

102. In pertinent part, Section 35.134 (a) (Retaliation or coercion) of the ADA states: a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing under the Act or this part.

---

[12] Furthermore, the plaintiff argues that such reasoning is also perverse, specifically because it was the defendant district's historic practice/policy of "outsourcing" the post-elementary education of all of its "alternately assessed special education students" which was responsible for creating the lack of age-cohorts. Indeed, it wasn't until the plaintiff commenced an action against the defendant school district that the school district decided to create a class – of course nevertheless still attempting to keep the plaintiff segregated therefrom.

103. In pertinent part, Section 35.134 (b) (Retaliation or coercion) of the ADA states: b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected under the Act or this part.

104. The plaintiff respectfully submits that by virtue of the retaliatory motive expressed by the defendant district for withdrawing the educational instruction of plaintiff in October 2022, that the defendant district violated the ADA's protections against retaliation.

105. The plaintiff respectfully submits that the defendant district's expressed retaliatory motive is evidence of the defendant district's abject maliciousness, gross recklessness and/or negligence, and callous indifference towards the plaintiff's educational needs.

*4th Cause of Action: 1983 – Equal Protection Relating to Disparate Educational Treatment*

106. The plaintiff re-asserts the statements set forth within paragraphs 1-105.

107. Prior to the commencement of the 2022-2023 academic year, which began on July 1, 2023 for the plaintiff, the defendant district was operating a "12:1:1 special class" within the defendant district's High School.

108. The foregoing "12:1:1 special class" was composed of special education students who required the same educational needs as the plaintiff.

109. In fact, NYSED's age-variance approval established how the plaintiff profiled as being educationally similar to the students within the class, and thus how he profiled as being similarly situate.[13]

---

[13] NYSED's findings are memorialized within a March 6, 2023 letter to the defendant district. Notably, NYSED's findings were predicated upon a viewing of the plaintiff, the defendant district's "12:1:1 class", and the briefs submitted to it.

110. Indeed, NYSED's age-variance approval confirmed the following similarities existing between the plaintiff and the other students in the class, therein profiling them as being similarly situate:

a) NYSED held that the plaintiff has developmental and disability-related needs similar to the other students in the 12:1+1 middle/high school special class;

b) NYSED held that all of the students had IEP programs that include a class range of no more than 12 students;

c) NYSED held that all of the students had para-professional aids;

d) NYSED held that all of the students had intellectual disabilities, language/communication deficits, and that they all required related services, modifications, and accommodations;

e) NYSED held that all of the students were assessed against alternate achievement standards that are reduced in depth, breadth, and complexity.

111. In light of the existence of the defendant district's "12:1:1 special class", the defendant district evidenced an ability to educate "alternately assessed special education students" just like the plaintiff.

112. However, the administrative record confirms how the defendant district refused to consider educating the plaintiff within a similar "12:1:1 format" within the district – irrespective of whether or not the plaintiff could be integrated within the district's pre-existing "12:1:1 class" via an age-variance.

113. In light of the foregoing, the plaintiff respectfully submits that he was treated unequally to the students in the defendant district's pre-existing "12:1:1 special class", particularly because although he profiled as being educationally similar, he was denied placement within a 12:1:1 format akin to the other students in the defendant district's pre-existing special class.

114. The plaintiff respectfully submits that the defendant district's unequal treatment was malicious, grossly reckless and/or negligent, and callously indifferent to the needs of the plaintiff.

*4th Cause of Action: 1983 – Equal Protection Relating to Age-Variance Application*

115. The plaintiff re-asserts the statements contained within paragraphs 1-114 herein.

116. Due to the varying ages of the students in the defendant district's pre-existing "12:1:1 special class", as compared to the age of the plaintiff, the plaintiff's inclusion within such class required the submission of an age-variance application.

117. Prior to the commencement of the 2022-2023 academic year, which began in July 2022, the plaintiff's parents had requested that the defendant district apply for such age-variance.

118. The defendant district refused to do so however.

119. Notably however, during the summer of 2022, the defendant district did pursue the filing of an age-variance for another student into the class (the student shall be identified utilizing his initials as "DB").

120. Equally notable, the age-variance for this student was greater than the age-variance that the defendant school district had previously argued was too significant to overcome for the plaintiff's inclusion within the class.[14]

121. Further, an analysis of such student's age-variance application reveals that the defendant district did not mention the plaintiff's possible inclusion within the subject class, and thus did not

---

[14] What highlights the unequal treatment is that plaintiff had been requesting the filing of an age-variance application for approximately 3 years and yet was continually rebuffed by the defendant district. Worse, the defendant district then weaponized the inclusion of the newest inductee into the special class against the plaintiff. In fact, the record reveals that the defendant district had to be administratively ordered to file for an age-variance for the plaintiff – and twice for that matter! Upon information and belief, no other school district in New York has ever been ordered to file an age-variance – an infamous distinction that again, the defendant district has now suffered twice.

profile the potential age-disparity between such student and the plaintiff as being an impediment.[15]

122.  NYSED granted the age-variance for such student.

123.  By way of comparison, within the context of the plaintiff's age-variance application, the defendant district then utilized the newly admitted student's age as a means to argue against the plaintiff's inclusion within the subject class.

124.  An analysis of the comparative age-variance applications further profiles the disparate and unequal treatment afforded between the students.

125.  In light of the foregoing, the plaintiff respectfully submits that the defendant district treated the plaintiff unequally by first refusing to timely apply for an age-variance in a manner necessary for the plaintiff to be potentially included prior to the commencement of the 2022-2023 academic year, and moreover by subsequently drafting the plaintiff's age-variance in a clear disparate and unequal manner and form than it did for the other identified student.

126.  The plaintiff respectfully submits that the defendant district's unequal treatment was malicious, grossly reckless and/or negligent, and callously indifferent to the needs of the plaintiff.

*Cause of Action: 1983 - Due Process*

127.  The plaintiff re-asserts the statements set forth within paragraphs 1-126.

128.  The plaintiff respectfully submits that because the defendant school district refused to timely apply for an age-variance for the 2022-2023 academic year, the plaintiff was denied meaningful access to the due process protections afforded by the IDEA – namely being having the possibility of an approved age-variance available for the CSE's consideration, prior to the convention of the 2022-2023 academic year.

---

[15] The plaintiff procured a copy of the age-variance application via a Freedom of Information Request (FOIL).

129.    The plaintiff respectfully submits that the defendant district's preclusion of the due process protections contemplated by the IDEA and 504 was malicious, grossly reckless and/or negligent, and evidenced a callous indifference to the needs of the plaintiff.

**WHEREFORE**, the plaintiff respectfully requests the Court to overturn the administrative decisions of the assigned IHO and SRO, therein holding that the defendant district's actions were violative of the IDEA in the numerous manners alleged, therein meriting an award for "back-end" compensatory education for the period of September 2022 – April 14, 2023. In addition, the plaintiff respectfully requests the Court to issue a decision holding that the defendants collective actions violated the ADA, 504, as well as the plaintiff's rights to due process and equal protection, and moreover did so in a malicious, grossly reckless and/or negligent manner, therein warranting compensatory and punitive damages to the extent permitted by law.[16]

Date: 7/10/23

x. _____
   Christian Killoran, on behalf of his son, Aiden Killoran

---

[16] As the plaintiff is seeking compensatory education for the period between September 2022 and April 2023, such compensatory education cannot feasibly be made up during the plaintiff's last year of academic instruction (2023-2024). As such, the plaintiff is seeking a monetary award to facilitate the plaintiff's placement (tuition) within an appropriate post-secondary learning institution.

# VERIFICATION

STATE OF NEW YORK     )
                             ) ss:
COUNTY OF SUFFOLK    )

      CHRISTIAN KILLORAN, Plaintiff herein being duly sworn, deposes and says that he has read the

foregoing COMPLAINT; deponent knows its content and knows that it is true to the best of deponent's

knowledge, except as to those matters stated to be upon information and belief, and as to those matters

deponent believes them to be true.

_____
CHRISTIAN KILLORAN

Sworn to before me this
\_\_\_\_\_day of July, 2023

_____
NOTARY PUBLIC

ANDREA SICILIANO
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01SI6044574
Qualified In Suffolk County
Commission Expires July 10, 20___